UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
KATRINA VAN CORTLANDT,                                       :
                                                             :
                              Plaintiff,                     :          07 CIV 1783 (MDF)
                                                             :
                                                             :          DECISION AND ORDER
        -against-                                            :
                                                             :
                                                             :
WESTCHESTER COUNTY, WESTCHESTER                              :
MEDICAL CENTER, DR. NEIL ZOLKIND,                            :
DR. REBA BINDRA, DR. MAHPARE KHAN,                           :
DR. MITCHEL NOBLER and                                       :
KEVIN O'CONNELL,                                             :
                                                             :
                              Defendants.                    :
-------------------------------------------------------------X

MARK D. FOX, United States Magistrate Judge

        In December 2006, Katrina Van Cortlandt ("Plaintiff") commenced this action by filing a

summons with notice in New York State Supreme Court, Westchester County.  Pursuant to 28

U.S.C. § 1441(a), the action was removed to this Court in March 2007.

        The complaint names Westchester County, Westchester Medical Center, Dr. Neil

Zolkind, Dr. Reba Bindra, Dr. Mahpare Khan, Dr. Mitchel Nobler and Kevin O'Connell as

defendants,[1] and asserts claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's Fourth,

Fifth and Sixth Amendment rights under the United States Constitution, as well as claims for

violation of Plaintiff's rights under Sections 1, 6 and 12 of the New York State Constitution Bill

_____

        [1] The proposed amended complaint ("PAC") alleges that Dr. Zolkind, Dr. Bindra, Dr.
Khan, Dr. Nobler and Mr. O'Connell were employed by the Westchester County Health Care
Corporation at all relevant times.  The Westchester County Health Care Corporation is a public
benefit corporation (created pursuant to Public Authorities Law § 3303) that is named as a
defendant in the proposed amended complaint in place of Westchester Medical Center.  PAC ¶¶
12-18.

of Rights, and New York Mental Hygiene Law.

Defendants Dr. Nobler and Dr. Zolkind answered the complaint, and Defendants Westchester County, Westchester County Health Care Corporation (named in the proposed amended complaint in place of Westchester Medical Center), Dr. Bindra, Dr. Khan and Kevin O'Connell (together, the "Moving Defendants") moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

In response, Plaintiff cross-moved for leave to file a late notice of claim and to amend the complaint. Plaintiff's motion to amend the complaint seeks, *inter alia*, to add: (1) another defendant, Ken Ross, an employee of Westchester County; (2) state law claims sounding in fraud and malpractice; and (3) allegations regarding Westchester County's municipal policy concerning the seizure and institutional commission of elderly citizens.

The parties have consented to this Court's determination of these motions pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the motion to dismiss the complaint is granted in part and denied in part, Plaintiff's cross-motion for leave to file a late notice of claim is denied, and Plaintiff's cross-motion to amend the complaint is granted in part and denied in part.

## BACKGROUND

The following facts are alleged in the original complaint or the proposed amended complaint where noted. Plaintiff, a seventy-eight year old female, became ill in October 2006 and was taken from her home in Cortlandt Manor, New York by ambulance to the Hudson Valley Medical Center for treatment. Plaintiff contracted Erlichiosis, a tick borne disease, and suffered from high fever and dehydration. She was kept at the Hudson Valley Medical Center for one week and then released to the Cortlandt Health Care Center for rehabilitation. While

Plaintiff completed her physical therapy and treatment for Erlichiosis in late November 2006, the Cortlandt Health Care Center declined to release her due to the condition of her home, which was in disarray due to both Plaintiff's own physical injuries and vandalism that occurred when her home was inadvertently left unlocked while she was away. Compl. ¶¶ 10-16.

On December 1, 2006, Plaintiff was given permission to leave the Cortlandt Health Care Center to run errands. When Plaintiff returned home, she decided that she needed to stay to arrange for her home to be cleaned, and advised the Cortlandt Health Care Center that she would not be returning. *Id.* ¶¶ 19-21.

On December 2, Plaintiff scheduled various professional cleaners to clean her home within the next week. The Cortlandt Health Care Center also contacted Westchester County's Adult Protective Services ("APS") at or around this time, which in turn contacted the New York State Police and ordered that Plaintiff be picked up and transported to the Westchester Medical Center (or "Hospital") for evaluation. *Id.* ¶¶ 22-24.

On the evening of Sunday, December 3, a Westchester County representative (identified in the proposed amended complaint as Defendant Ken Ross (Aff. of Anthony Giordano, May 11, 2007 ("Giordano Aff."), Ex. B, PAC ¶ 27) and members of the New York State Police went to Plaintiff's home. Defendant Ross told Plaintiff that the State Police came to take her to the Westchester Medical Center in Valhalla, New York to meet with an Adult Protective Services representative. Plaintiff declined, and offered instead to drive herself to the Hospital on Monday or Tuesday after meeting with the cleaners scheduled to clean her home. Defendant Ross told Plaintiff, however, that she would be taken to the Hospital by force if she refused to leave her home. Under this threat of forced removal, Plaintiff entered the police vehicle for the trip to

Valhalla.[2]  *Id.* ¶¶ 25-30.

Fifteen minutes after her arrival at the Westchester Medical Center, Plaintiff met with a social worker who informed her that he would recommend that she be released, and file a "72 hour notice" on her behalf.  Nevertheless, Plaintiff was involuntarily admitted and taken to the psychiatric unit.[3]  *Id.* ¶¶ 33-38.

On December 4, Plaintiff began asking when she would be released and was told she first had to speak to "members of [her] team."  Plaintiff was prohibited from directly contacting her attorney, Anthony Giordano, but was eventually able to convey a message to him through a friend to request his appearance for a meeting with her doctors and APS scheduled for December 6.  *Id.* ¶¶ 40-44.

On December 6, Plaintiff's attorney appeared at the Westchester Medical Center's psychiatric unit where Plaintiff was being held.  There, an intern informed Mr. Giordano that he had evaluated Plaintiff and found her mentally competent, but his superiors intended to keep her detained for reasons he could not share.  Shortly before the scheduled meeting, Plaintiff's attorney met with Dr. Bindra, who advised that "it was the facility's opinion that plaintiff

---

[2] The proposed amended complaint includes further allegations that APS decided to remove Plaintiff from her home without knowledge of her recent medical history or mental condition, and despite the fact that she did not, at the time she was removed – nor during her stay at the Hudson Valley Medical Center or the Cortlandt Health Care Center – exhibit any behavior to suggest she was a danger to herself or others.  The proposed amended complaint also alleges that county officials or persons at the direction of such officials wrongfully entered Plaintiff's home without her knowledge or permission and took a photograph of its condition.  PAC ¶¶ 27-33.

[3] The proposed amended complaint specifically alleges that Plaintiff was involuntarily admitted to the Hospital without first meeting with any psychiatrist or medical doctor, and that at no time during her stay at the Hospital was Plaintiff examined by a psychiatrist.  PAC ¶¶ 38, 41.

[should] remain because a 'program' had not yet been devised by her team." *Id.* ¶¶ 45-49.

At Dr. Bindra's suggestion, Mr. Giordano went to meet with Dr. Solkind to discuss Plaintiff's case in Dr. Solkind's office located down the hall outside the secure ward where Plaintiff was being held. At this time, Plaintiff was taken into a room where the scheduled meeting began without her attorney present. This meeting was attended by Dr. Nobler, Dr. Bindra and Dr. Solkind, among others from APS, and Plaintiff was asked to sign documents which she refused to do without her attorney present. *Id.* ¶¶ 50-56.

Plaintiff's attorney never met with Dr. Solkind. Eventually, he was able to enter the meeting room, but upon his entrance, Dr. Bindra asked to speak with him outside the room. When Mr. Giordano declined and asked why the meeting began without him, Dr. Bindra told him that his presence was upsetting Plaintiff, and ordered a security guard to physically escort him from the secure ward. *Id.* ¶¶ 57-62.

After the meeting ended, Plaintiff grabbed Mr. Giordano's arm and told him she wanted to leave. When Mr. Giordano attempted to escort her to the elevator, security guards blocked their exit. At this time, Mr. Giordano spoke to Defendant O'Connell, who agreed that if Mr. Giordano and Plaintiff returned to the secure ward, Mr. Giordano could then review the relevant documents to ensure that Plaintiff's stay at the Hospital was legal. However, when they returned to the secure facility, Defendant O'Connell informed Mr. Giordano that Plaintiff could not go home unless she signed a form which provided that the Hospital was entitled to 72 hours written notice before Plaintiff could be released. Defendant O'Connell also informed Mr. Giordano that he could be arrested if he tried to remove Plaintiff from the facility again. Under these circumstances, Plaintiff signed the form and remained against her will with the expectation that

she would be released.  *Id.* ¶¶ 63-72.

On December 8, Plaintiff learned that she would not be released and contacted her attorney to initiate a lawsuit.  Mr. Giordano filed a summons with notice that same day in New York State Supreme Court, Westchester County, but was refused entrance to the Hospital to serve the defendant doctors.  When visiting hours commenced, Mr. Giordano was refused entrance to visit with his client and informed that he would be arrested by Westchester County police if he did not leave the premises. When the police arrived, Mr. Giordano was, in fact, forced to leave under threat of arrest.  Plaintiff remained at the Hospital until December 15, at which time Mr. Giordano negotiated her release with counsel for the Westchester Medical Center.[4] *Id.* ¶¶ 73-83.

Based on these allegations, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for violation of her Fourth, Fifth and Sixth Amendment rights under the United States Constitution, and state law claims for violation of her rights under the New York State Constitution and New York Mental Hygiene Law, as well as for medical malpractice and fraud.

Now before me are the Moving Defendants' motion to dismiss and Plaintiff's cross-motion for leave to file a late notice of claim and to amend the complaint.

---

[4] The proposed amended complaint further alleges that as part of the arrangement to permit her release from the Hospital, Plaintiff was forced to allow cleaning personnel into her home who removed most of her furniture and personal property in her absence.
After her release, Plaintiff also received a list from Medicare/Medicaid of the services and medication she purportedly received from the Westchester Medical Center.  This list included services and medication never received by Plaintiff.  As a result, Plaintiff believes that elderly people like her are routinely taken to the Westchester Medical Center to "bill Medicare/Medicaid for treatments never actually done."  PAC ¶¶ 74, 76-79.

## DISCUSSION

### I.      Standard of Review

#### A.      Rule 12(b)(6)

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007), the Supreme Court reconsidered the standard for deciding a defendant's motion to dismiss, and applied "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  While *Twombly* did not make clear whether this change from traditional pleading standards applies outside the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). Accordingly, a complaint may be dismissed under this standard where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL 2456625, at *4-5 (S.D.N.Y. Aug. 29, 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.*  Nevertheless, courts must continue to accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI*, 493 F.3d at 98.

The court must also limit itself to "a consideration of the facts alleged on the face of the complaint, and to any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted).

### B.    Rule 15(a)

A party may amend its pleading once as a matter of right before a responsive pleading is served or within twenty days after the pleading is served.  Fed. R. Civ. P. 15(a).  A party may also amend its pleading with written consent from the opposing party or by filing a motion for leave to amend with the court.  *Id.*  While Rule 15(a) requires that leave to amend be freely granted, it remains within the sound discretion of the court whether to allow amendment.  *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  Leave to amend may be properly denied for reasons of undue delay or futility, among other factors.  *Id.*  "An amendment is futile if the amended claim could not survive a motion to dismiss."  *Mtshali v. New York City College of Tech.*, No. 05 Civ. 358, 2006 WL 2850216, at *2 (S.D.N.Y. Oct. 4, 2006) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

### C.    Rule 21

The addition of new parties to an action is governed by Rule 21, under which the court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Infosint S.A. v. H. Lundbeck A/S*, No. 06 Civ. 2869, 2007 WL 2489650, at *2 (S.D.N.Y. Sept. 4, 2007) (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (citations omitted)).  Thus, it is also within the court's discretion to determine whether additional parties should be included in a pending action.  *Id.*

## II.    § 1983 Claims

To establish a claim under § 1983, a plaintiff must allege that the challenged conduct was attributable to a person acting under color of state law, and that such conduct deprived the

plaintiff of a "right, privilege or immunity secured by the Constitution or laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citations omitted). § 1983 provides a procedure for redress where an individual has been deprived of rights established elsewhere – it does not itself create substantive rights. *Id.*

Under the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), § 1983 claims are not subject to a heightened pleading standard, but only to the notice pleading standard set forth in Rule 8. *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000) ("That is to say, all [the complaint] must contain is 'a short and plain statement of the claim showing that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)).

In this case, the defendants do not dispute that they were acting under color of state law. The only issue to be resolved, therefore, is whether their conduct deprived Plaintiff of a right guaranteed by the Constitution or federal law.

Involuntary civil commitment raises two potential constitutional issues – the Fourth Amendment prohibition against unreasonable search and seizure and the right to due process under the Fourteenth Amendment. *Drozdik v. City of New York*, No. 01 Civ. 3300, 2003 WL 366639, at *4 (S.D.N.Y. Feb. 20, 2003) (citations omitted). Plaintiff alleges that her rights under the Fourth, Fifth and Sixth Amendments were violated. Compl. ¶¶ 84-92; PAC ¶¶ 80-88. I will address each claim in turn.

### A.    Fourth Amendment Claim

Plaintiff's involuntary commitment at Westchester Medical Center constitutes a seizure under the Fourth Amendment, which protects against unreasonable searches and seizures. *Fisk v.*

*Letterman*, 501 F. Supp. 2d 505, 526 (citing *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993);

*Drozdik*, 2003 WL 366639, at *4). An involuntary hospitalization does not violate the Fourth

Amendment, however, if it is based on probable cause, meaning that "there are reasonable

grounds for believing that the person seized is dangerous to herself or to others." *Fisk*, 501 F.

Supp. 2d at 526 (citations and internal quotations omitted). Here, Plaintiff alleges that she was

removed from her home by Adult Protection Services solely based on the condition of her home,

which was in disarray not only because of Plaintiff's own physical injuries, but also due to

vandalism. Moreover, Plaintiff alleges that she intended to have her home cleaned when she

discovered its condition, and that she exhibited no behavior that would suggest she was a danger

to herself or others before her involuntary commitment. Compl. ¶¶ 16-22; PAC ¶¶ 23-25, 29-32.

Notwithstanding the Moving Defendants' factual contentions to the contrary, *see Mem. of Law in

Supp. of Pre-Answer Mot. to Dismiss* at 7-8, Plaintiff's allegations must be accepted as true at

this stage of the litigation and as such, Plaintiff's claim for violation of her rights under the

Fourth Amendment is sufficient to survive a motion to dismiss.

### B.      Fifth Amendment Claim

Because the Fifth Amendment applies only to the federal government, Plaintiff cannot

state a claim for deprivation of due process in violation of the Fifth Amendment where, as here,

there are no allegations of federal action. *Taylor v. Evans*, 72 F. Supp. 2d 298, 305 n.3

(S.D.N.Y. 1999) (citing *Flowers v. Webb*, 575 F. Supp. 1450, 1456 (E.D.N.Y. 1983)). The Fifth

Amendment does not regulate the activities of state officials or state actors. *Manbeck v.

Katonah-Lewisboro School Dist.*, 435 F. Supp. 2d 273, 276 (S.D.N.Y. 2006) (citations omitted).

A complaint will not be dismissed, however, merely because the plaintiff's allegations do

not support the particular legal theory named in the complaint. In fact, "[a] court presented with a motion to dismiss must examine the complaint to determine whether the allegations provide a basis for relief under any possible theory." *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 160 (E.D.N.Y. 1998) (citing cases). Here, in addition to the alleged violation of her Fourth Amendment rights, Plaintiff alleges what could be construed as a denial of due process in violation of the Fourteenth Amendment. *See, e.g., Warheit D.D.S. v. City of New York*, No. 02 Civ. 7345, 2006 WL 2381871, at *11 (S.D.N.Y. 2006) (citing *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995)); *Tewksbury v. Dowling*, 169 F. Supp. 2d 103, 108 (E.D.N.Y. 2001).

The Second Circuit has held that involuntary commitment is a "massive curtailment of liberty" that cannot be accomplished without due process of law. *Rodriguez*, 72 F.3d at 1061 (quoting *Vitek v. Jones*, 445 U.S. 480, 491 (1980)). "As a substantive matter, due process does not permit the involuntary hospitalization of a person who is not a danger either to herself or to others." *Id.* "[A]s a procedural matter, due process does not permit continuation of a challenged involuntary civil commitment without a hearing." *Id.* at 1062.

Although the Moving Defendants correctly note that the Second Circuit has upheld the constitutionality of the procedures for the involuntary commitment of mentally ill patients under New York Mental Hygiene Law, *see Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983), Plaintiff alleges that these procedures were not followed. The Moving Defendants submit materials outside the pleading and argue that they acted in full compliance with the procedures set forth by Mental Hygiene Law § 9.39. They dispute whether the December 6 meeting – at which the presence of Plaintiff's attorney was allegedly prohibited (Compl. ¶¶ 48-53; PAC ¶¶ 45-

53) – was an interview in preparation for a "judicial retention hearing," wherein Plaintiff would have the right to have counsel present. *See Ughetto v. Acrish*, 518 N.Y.S.2d 398, 403-05 (2d Dep't 1987). They further dispute the conduct of Plaintiff's attorney, asserting that his removal from this meeting was in accordance with Mental Hygiene Law because he was disruptive. *Mem. of Law in Supp. of Pre-Answer Mot. to Dismiss* at 10-13. But these arguments are not based on the allegations as they appear on the face of the complaint. Rather, they are indicative of disputed issues of fact, resolution of which would be inappropriate on this pre-discovery motion to dismiss.

This Court must instead accept as true Plaintiff's allegations that contrary to the requirements set forth under Mental Hygiene Law, Plaintiff was not a danger to herself or to others at all relevant times (compl. ¶ 103; PAC ¶¶ 29-32, 99), that she did not meet with any psychiatrist or medical doctor before she was involuntarily admitted to the Hospital (compl. ¶¶ 33-38; PAC ¶¶ 37-40), and that she was not given proper notice of her status and rights as an involuntary patient upon admission to the Hospital (compl. ¶ 71; PAC ¶ 62). *See also* Giordano Aff., Ex. A, Aff. of Katrina Van Cortlandt ¶¶ 19-20.

Accordingly, Plaintiff § 1983 claim for violation of her Fifth Amendment rights is dismissed without prejudice to Plaintiff amending the complaint to plead a § 1983 claim for violation of due process under the Fourteenth Amendment.

## C. Sixth Amendment Claim

The Sixth Amendment expressly protects only those in *criminal* proceedings and accordingly does not apply to the factual allegations as asserted by Plaintiff in this case. *See*, *e.g.*, *Oliver v. D'Amico*, No. 07-1968, 2007 WL 2682993, at *6 (D.N.J. Sept. 7, 2007); *Katzman*

*v. Khan*, 67 F. Supp. 2d 103, 111 (E.D.N.Y. 1999) ("The Sixth Amendment expressly protects only those accused in a 'criminal prosecution.'") (citing U.S. Const. amend. VI). To the extent Plaintiff alleges her right to counsel pursuant to Mental Hygiene Law was violated, such allegations pertain to Plaintiff's right to due process under the Fourteenth Amendment. *Project Release*, 722 F.2d at 976; *see*, *e.g.*, *Lubera v. Jewish Ass'n for Services for Aged*, No. 95 Civ. 7485, 1996 WL 426375, at *8 (S.D.N.Y. July 30, 1996) (failure to observe the procedures of the Mental Hygiene Law constitutes a violation of procedural due process); *dePoel v. City of New York*, 772 F. Supp. 106, 108-09 (E.D.N.Y. 1991) (same). Accordingly, this claim is also dismissed without prejudice to Plaintiff amending the complaint to plead a § 1983 claim for violation of due process under the Fourteenth Amendment.

## III. State Law Claims

Plaintiff alleges violations of her rights under the New York State Constitution and New York Mental Hygiene Law, as well as claims sounding in malpractice and fraud. PAC ¶¶ 80-109. Where, as here, the plaintiff seeks to assert pendant state law claims to a federal civil rights action in federal court, it is well settled that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guarantee Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

Accordingly, New York County Law § 52 applies to this case and requires Plaintiff to comply with N.Y. General Municipal Law § 50-e notice of claim provisions in order to maintain an action for damages against Westchester County. *See Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006); *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 197-98 (E.D.N.Y.

2006). New York Public Authorities Law § 3316 similarly requires compliance with General

Municipal Law § 50-e to maintain an action against a public benefit corporation such as the

Westchester County Health Care Corporation. *See*, *e.g.*, *Matter of N.M. v. Westchester County

Health Care Corp.*, 781 N.Y.S.2d 370, 372 (2d Dep't 2004); *Williams v. Azeez*, 753 N.Y.S.2d 93,

94 (2d Dep't 2002).

      As a condition precedent to suit against a municipality or public corporation, § 50-e

requires that a notice of claim be served on the defendant within ninety days of the incident

giving rise to the claim. Absent a showing by the plaintiff that a notice of claim has been served,

the complaint may be dismissed. *Horvath*, 423 F. Supp. 2d at 423 (citations omitted).

      § 50-e does not require a notice of claim for suits brought against a municipal or public

corporation employee unless the public corporation or municipality is required to indemnify the

employee. *Wrobel v. County of Erie*, No. 03-CV-277C, 2004 WL 2922087, at *3 (W.D.N.Y.

Dec. 16, 2004) (citing N.Y. Gen. Mun. Law § 50-e(1)(b); *Zwecker v. Clinch*, 720 N.Y.S.2d 150,

152 (2d Dep't 2001)). The obligation to indemnify turns on whether the individual defendant

was acting within the scope of his employment when he committed the allegedly illegal actions.

*Id.* (citations omitted). "Moreover, to prevail on its assertion that the municipality is not required

to indemnify the defendant municipal employee, the plaintiff is required to offer some evidence

establishing that the defendant's alleged illegal actions occurred outside the scope of

employment." *Id.*

      Although whether an individual defendant's alleged conduct occurred within the scope of

employment is often a question of fact, the court is not precluded from deciding this question as a

matter of law where the plaintiff's allegations regarding an individual defendant are limited to

conduct that occurred within the scope of employment.  *See Wrobel*, 2004 WL 2922087, at *3-4 (denying motion to amend complaint with respect to state law claim against county employees where conduct alleged in the proposed amended complaint was within the scope of employees' official duty and plaintiff failed to file notice of claim); *Pierce v. Netzel*, No. 98-CV-532A, 2004 WL 1055959, at *16-17 (W.D.N.Y. May 10, 2004) (citing *McCormack v. Port Washington Union Free School Dist.*, 625 N.Y.S.2d 57, 58-59 (2d Dep't 1995) (holding that plaintiff was required to comply with notice of claim provisions where complaint alleged that conduct of school principal sued individually came within the scope of his employment)).  Here, the proposed amended complaint does not allege any conduct outside the scope of the individual defendants' scope of employment.  Rather, Plaintiff alleges that the individual defendants used "their official powers to deny plaintiff rights afforded under law."  PAC ¶ 3.  Thus, Plaintiff cannot be excused from complying with the notice of claim requirement with regard to all of the defendants in this case.  *Wrobel*, 2004 WL 2922087, at *3-4.

Plaintiff has yet to file any notice of claim in this case and has erroneously submitted to this Court an application to file a late notice.  While a plaintiff who fails to comply with the notice of claim requirement may file a late notice of claim under § 50-e(5), the statute specifies that all such applications shall be made to the "supreme court or to the county court."  N.Y. Gen. Mun. Law § 50-e(7).  "Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."  *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing *Jewel v. City of New York*, No. 94 Civ. 5454, 1995 WL 86432, at *1-2 (S.D.N.Y. Mar. 1, 1995); *Brown v. Metro Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y.

1989) ("Until the state legislature amends § 50-e(7) [of New York General Municipal Law] to include federal trial courts, we have no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.")).

Because Plaintiff failed to serve a timely notice of claim on Westchester County, Westchester County Health Care Corporation, or the respective employees of each entity, and this Court lacks authority to permit Plaintiff to file a late notice of claim, Plaintiff's state law claims are dismissed without prejudice. *See Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) ("[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims.") (emphasis in original); *Alexander v. City of New York*, No. 02 Civ. 3555, 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) ("[T]he New York notice of claim requirement applies to both common law causes of action, and to actions founded upon violations of state constitutional provisions.")).[5]

Plaintiff can renew her motion for leave to amend the complaint in this action to assert her pendant state law claims only after she has filed an application with the appropriate state court for leave to file a late notice of claim, and that request has been granted and such notice has been served.[6] *See Henneberger*, 465 F. Supp. 2d at 199; *Horvath*, 423 F. Supp. 2d at 424-25;

_____

[5] While the New York Court of Appeals has recognized a public interest exception to the notice of claim requirement where an action is brought to vindicate a public interest rather than to enforce an individual's rights, *Union Free School Dist. No. 6 v. New York State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 379-80 (1974), this exception does not apply where, as here, the relief requested is monetary damages for the plaintiff's own injuries and the disposition of the plaintiff's claims "was not intended to nor could it directly affect or vindicate the rights of others." *Mills v. County of Monroe*, 59 N.Y.2d 307, 312 (1983).

[6] Until Plaintiff has complied with the notice of claim provisions under § 50-e, it is unnecessary for the Court to further address the merits of Plaintiff's state law claims. *See Henneberger*, 465 F. Supp. 2d at 200-01 ("New York law requires that *some* notice of claim be served upon defendants before a court can entertain plaintiffs' state law claims.") (emphasis in

*Brown*, 717 F. Supp. at 260-61.

## IV.     Municipal Liability

### A.     *Monell* Liaibility

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "[a] municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (*citing Monell*, 436 U.S. at 691). A § 1983 claim may be brought against a municipality, however, where the municipality's "policy or custom" deprived the plaintiff of constitutional rights. *See Zahra*, 48 F.3d at 685. A plaintiff must show that a particular municipal policy or practice was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694.

Under *Leatherman*, allegations concerning the existence of a municipal policy are not subject to a heightened pleading standard, but only to the notice pleading standard set forth in Rule 8. *See*, *e.g.*, *Nesbitt v. County of Nassau*, No. 05 CV 5513, 2006 WL 3511377, at *3 (E.D.N.Y. Dec. 6, 2006); *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 74 n.3 (S.D.N.Y. 1993) ("[T]he *Leatherman* opinion . . . appears to change the law in the Second Circuit which theretofore generally required dismissal of a complaint which merely asserted conclusorily the existence of a policy without allegations of fact beyond the single incident alleged in the complaint.").

---

original) (citing *Hey v. Town of Napoli*, 695 N.Y.S.2d 643, 644 (4th Dep't 1999) ("Compliance with the notice of claim requirement falls within the threshold jurisdiction of the court.") (citations and internal quotations omitted)). Should Plaintiff seek to renew her motion to amend the complaint to reassert her state law claims, the defendants can renew any opposition thereto if appropriate.

The Moving Defendants argue that Plaintiff's allegation concerning Westchester County's municipal policy – that Westchester County "has in place or has passively approved of a municipal policy permitting its Adult Protective Services to improperly and in a grossly negligent manner, use the Mental Hygiene Law to seize and institutionalize elderly citizens it believes are living in an unsafe environment . . . contrary to the actual requirements under the Mental Hygiene Law" – is insufficient because it is conclusory and lacks factual support.  Reply Mem. of Law in Supp. of Pre-Answer Mot. to Dismiss at 8 (citing PAC ¶ 111).  However, this allegation – coupled with the particular example of Plaintiff's seizure and commission to the Hospital and the inferences that may be drawn therefrom – constitutes a short and plain statement that gives fair notice of Plaintiff's municipal policy claim and the grounds upon which it rests. The complaint need not set out in detail the facts on which a claim is based.  Rather, it is up to the "liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Nesbitt*, 2006 WL 3511377, at *4 (denying motion to dismiss against county despite conclusory allegations of the existence of an official policy "not buttressed, in the complaint, by supporting facts") (citations omitted); *see Leatherman*, 507 U.S. at 168-69; *Simpkins*, 832 F. Supp. at 73 ("A plaintiff is not required to 'state or establish exactly' in his complaint the policy by which he alleges the defendants violated his rights, nor is he required to plead more than a single instance of misconduct.").[7]

---

[7] The Moving Defendants cite *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002), for the burden a plaintiff must meet to show the existence of a municipal policy.  However, *Brogdon* was decided on a motion for summary judgment and therefore required the plaintiff to meet a higher burden than what is needed to survive a motion to dismiss. *See Warheit*, 2006 WL 2381871, at *12 n.4 (noting the higher burden on summary judgment for showing the existence of a municipal policy).

**B.      Immunity from Civil Liability**

The Moving Defendants argue that the County's APS officials are immune from civil liability pursuant to Social Services Law § 473(3), which provides that such an official will have immunity from any civil liability that might otherwise result by reason of providing protective services when the official is acting within the scope of employment and "such liability did not result from the willfull [sic] act or gross negligence of such official or his designee."  Reply Mem. of Law in Supp. of Pre-Answer Mot. to Dismiss at 6.  However, Plaintiff alleges that county officials or persons at the direction of such officials wrongfully entered her home without her knowledge or permission and took a photograph of its condition.  PAC ¶ 28.  She also alleges that APS decided to remove her from her home without knowledge of her recent medical history or past mental condition, and despite the fact that she was exhibiting no behavior to suggest she was a danger to herself or others.  *Id.* ¶¶ 31-32.  Plaintiff claims, therefore, that Westchester County allows APS to seize and institutionalize elderly citizens in a "grossly negligent manner" and contrary to the actual requirements of Mental Hygiene Law.  *Id.* ¶ 111.  Drawing all inferences in Plaintiff's favor as required on a motion to dismiss, these allegations – at the very least – raise a question of fact as to whether the county officials' actions were grossly negligent.

Accordingly, Plaintiff is not precluded from proceeding with § 1983 claims for violation of her Fourth and Fourteenth Amendment rights against Westchester County and Ken Ross, who is named as a defendant in the proposed amended complaint and alleged to have been employed by Westchester County at all relevant times.  *Id.* ¶ 19.

## V.    Qualified Immunity

The Moving Defendants also claim that qualified immunity attaches to Defendants Bindra, Khan and O'Connell in this action.  Mem. of Law in Supp. of Pre-Answer Mot. to Dismiss at 18.  The protection of qualified immunity, which is an immunity from suit, attaches where a government officials' conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191 (2d Cir. 2006) (quoting *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (citations and internal quotations omitted)).  Qualified immunity protects a government actor "if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act."  *Id.*

Although a motion to dismiss under Rule 12(b)(6) may be predicated upon a qualified immunity defense, "the defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).  "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route.  Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Id.* at 436 (citations and internal quotations omitted).

Here, the Moving Defendants argue that the actions of Defendants Bindra, Khan and O'Connell were objectively reasonable because they followed the procedures set forth under Mental Hygiene Law §9.39(a) for involuntary admission.  Mem. of Law in Supp. of Pre-Answer

20

Mot. to Dismiss at 20. However, Plaintiff alleges that these very procedures, as required by Mental Hygiene Law, were not followed. Compl. ¶¶ 71, 103; PAC ¶¶ 32-38, 62, 99. Moreover, the facts alleged by the Moving Defendants to support their assertion that Mental Hygiene Procedures were followed – i.e. that Dr. Khan examined Plaintiff and determined she had a mental illness likely to result in serious harm to herself, that Dr. Nobler confirmed these findings, and that Plaintiff was provided with a Notice of Status and Rights Emergency Admission form on December 3, 2006 (Mem. of Law in Supp. of Pre-Answer Mot. to Dismiss at 20) – do not appear in the complaint.

Because plaintiffs facing a motion to dismiss are "entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense," the Moving Defendants' argument that the § 1983 claims should be dismissed as against Defendants Bindra, Khan and O'Connell based on qualified immunity cannot succeed at this time. *McKenna*, 386 F.3d at 436.

## CONCLUSION

For the foregoing reasons, the motion to dismiss with respect to Plaintiff's § 1983 claim for violation of her Fourth Amendment rights is denied. Plaintiff's § 1983 claims for violation of her Fifth and Sixth Amendment rights, and her state law claims, are all dismissed without prejudice.

Plaintiff's cross-motion for leave to file a late notice of claim is denied. Plaintiff's cross-motion to amend the complaint is denied as to the dismissed federal and state law claims, and granted as to the other proposed changes.

Plaintiff shall file an amended complaint consistent with this ruling no later than fourteen

(14) days from the date of this order.

      The parties shall proceed with discovery as scheduled.

SO ORDERED

Dated: October 31, 2007
White Plains, New York

_____
MARK D. FOX
UNITED STATES MAGISTRATE JUDGE